IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-00394-CMA

BRYSON KNIGHT,

v.

GEORGE DUNBAR, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

    Respondents.

---

ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS

---

CHRISTINE M. ARGUELLO, District Judge

    This matter is before the Court on Petitioner Bryson Knight's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (the "Habeas Application") filed on February 25, 2009.[1]  (Doc. No. 1).  Respondents filed an Answer on May 14, 2009.  (Doc. No. 18; *see also* Doc. No. 16). Petitioner did not file a traverse.  The state court record has also  been filed in this Court.

## I.  BACKGROUND AND PROCEDURAL HISTORY

    The following facts are taken from the Habeas Application (Doc. No. 1), Respondents' Pre-Answer Response (Doc. No. 11), Respondents' Answer (Doc. No. 18), and all attachments and exhibits with respect to these documents.

    Petitioner asserts two claims in his Habeas Application: (1) he was deprived of his Sixth Amendment confrontation right when the trial court precluded defense counsel from cross-examining the prosecution's crime reconstruction expert witness, a Denver

---

[1] Because the Petitioner appears pro se, the Court construes his filings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21(1972).  However, the Court does not serve as his advocate. *See Hall v. Bellman*, 935 F.2d 1106, 1110 (10th Cir.1991).

police lieutenant, about a pending internal affairs investigation to show the witness's

bias or dishonest character; and, (2) he was prejudiced by the trial court's refusal to

sever the counts of first degree murder and first degree aggravated motor vehicle theft,

in violation of due process.[2]

## A.  STATE COURT PROCEEDINGS

Petitioner was charged in Denver District Court with one count of first degree

murder after deliberation and one count of first degree aggravated motor vehicle theft.[3]

On February 2, 2002, the Petitioner shot the victim, who was standing in the doorway or

on the front porch of his girlfriend's home in Denver, Colorado.  The bullet entered the

victim below the chin and exited at the back of his neck.  The coroner testified that the

victim was paralyzed instantly from the neck down.  Police recovered a 9mm

semiautomatic handgun near the victim's body, a shell casing from the front porch that

was fired from that weapon, and found gunshot residue on the victim's right hand.

Petitioner testified that he and his friend drove a stolen car to the victim's

girlfriend's house with the intention of challenging the victim to a fistfight because the

victim had punched the Petitioner in the mouth the previous day.  Petitioner stated that

his friend gave him a gun to take with him for protection because the victim was a gang

member.  At the girlfriend's house, Petitioner announced that he was there to fight the

victim.  Petitioner and the friend testified that the victim came outside to the porch and

---

[2]Although Petitioner does not characterize his second claim as a constitutional violation in his Habeas Application, he presented the claim to the state appellate court on direct appeal as a violation of his Fourteenth Amendment due process right to a fair trial.  Answer, Ex. A at 14.  Accordingly, the Court construes the claim liberally as asserting a deprivation of due process.

[3]This general introductory background is taken from the statement of the case and facts in the Petitioner's opening brief on direct appeal.  Answer, Ex. A at 1-7.

was holding his pocket like he had a gun.  Petitioner further stated that the victim

agreed to a fight, but the girlfriend protested and some argument followed.  According to

Petitioner, the victim and the girlfriend started to walk back toward the front door, but the

victim turned around, said "f— this s—," pulled his gun, and fired at Petitioner from

outside the door.  Petitioner testified that he ducked, fired at the victim as he was

backing away and then ran for the car.  Petitioner later drove the stolen car to

Oklahoma where he was attending college. He was arrested a few days later in

Oklahoma.

Following a jury trial in May 2003, Petitioner was convicted of the lesser included

offenses of second degree murder and aggravated motor vehicle theft.  He was

sentenced to consecutive prison terms of twenty-eight years and five years,

respectively.

Petitioner's convictions and sentences were affirmed on direct appeal.  *See*

*People v. Knight*, 167 P.3d 147 (Colo. App. 2006), Answer, Ex. B.  The Colorado

Supreme Court denied Petitioner's request for certiorari review on September 4, 2007.

Answer, Ex. D.

Petitioner then filed a motion for post conviction relief under Colo. Crim. P. Rule

35(c), which was denied by the trial court on January 16, 2009.  Answer, Exs. E, F, G.

He did not appeal the order denying his post conviction motion.

## B.  FEDERAL HABEAS PROCEEDING

Petitioner filed his Habeas Application in this Court on February 25, 2009.

Magistrate Judge Boyd N. Boland thereafter directed Respondents to file a Pre-Answer

Response to the Habeas Application limited to addressing the affirmative defenses of

timeliness under 28 U.S.C. § 2244(d) and exhaustion of state court remedies under 28

U.S.C. § 2254(b)(1)(A).  On March 24, 2009, Respondents filed their Pre-Answer

Response conceding that the Habeas Application was timely under the AEDPA and that

Petitioner had exhausted his available state remedies.  Pre-Answer Resp. at 4-7.  By

Order dated April 21, 2010, upon completion of the Court's review pursuant to

D.C.COLO.LCivR 8.2C, the case was drawn to a District Judge and to a Magistrate

Judge.

As a preliminary matter, the Court agrees with Respondents that the Application

is timely under 28 U.S.C. § 2244(d)(1) and that Petitioner exhausted his state remedies

before seeking federal habeas relief, as required by 28 U.S.C. § 2254(b).

## II.  ANALYSIS

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides

that an application for writ of habeas corpus may be granted only if the adjudication of

the claim (1) resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established federal law, as determined by the Supreme Court of

the United States; or (2) resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the state court

proceeding.  28 U.S.C. § 2254(d).

If a clearly established rule of federal law is implicated, the Court must determine

whether the state court's decision was contrary to or an unreasonable application of that

clearly established rule of federal law.  *See Williams v. Taylor*, 529 U.S. 362, 404-05

(2000).

A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard [v. Boone]*, 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).

A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id.* at 407-08. Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008).

The Court's inquiry pursuant to the "unreasonable application" clause is an objective one. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. "[O]nly the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Id.*

Claims of factual error are reviewed pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n. 4 (10th Cir. 2002). Section 2254(d)(2) allows a court to grant a writ of habeas corpus only if the state court decision was based

on an unreasonable determination of the facts in light of the evidence presented. Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct and the Petitioner bears the burden of rebutting the presumption by clear and convincing evidence.

The Court applies the AEDPA deferential standard of review when a state court adjudicates a federal issue relying solely on a state standard that is at least as favorable to the applicant as the federal standard.  *See Harris v. Poppell*, 411 F.3d 1189, 1196 (10th Cir. 2005).  The Court likewise owes deference to the state court's result if the court reached the merits of the Petitioner's claim, even if the court did not analyze the claim under federal law.  *See Aycox v. Lytle*, 196 F.3d 1174, 1177-78 (10th Cir. 1999).

## A.  CLAIM ONE

For his first claim, Petitioner asserts that he was deprived of his Sixth Amendment right to confront adverse witnesses when the trial court precluded defense counsel from cross-examining the prosecution's crime reconstruction expert, a Denver police lieutenant, about a pending internal affairs investigation.  Habeas Application, attachment at 2. Petitioner claims that the line of inquiry was probative of the witness's bias or motive and of his character for untruthfulness.  *Id.*

Before Petitioner's trial, the Denver Police Department began an internal affairs investigation into whether certain officers had moonlighted at second jobs during on-duty hours.  State Court R. Vol. IX at 21-22.  Petitioner's counsel learned that a prosecution witness, Lt. Priest, who was endorsed as an expert in crime scene

6

reconstruction, was one of the officers under investigation and subpoenaed the lieutenant's internal affairs file.  *Id.*; *see also id.*, Vol. I at 105.  A state magistrate judge denied counsel's request for an in camera review of the investigation records and quashed the subpoena. *Id.*, Vol. I at 25-26.  The trial court thereafter granted the prosecution's motion in limine to preclude the defense from cross-examining Lt. Priest about the moonlighting allegations, reasoning, in part, that "this is not a <u>Davis v. Alaska</u> situation."  *Id.* at 23.  The Denver Police Department internal affairs investigation was ongoing at the time of the trial court's ruling.  *Id.* at 24.

On direct appeal, Petitioner challenged the trial court's order as a violation of his Sixth Amendment confrontation rights.  The state appellate court resolved Petitioner's claim as follows:

### A. Governing Law

The right of a criminal defendant to confront adverse witnesses is guaranteed by the Sixth Amendment to the United States Constitution and by article II, § 16 of the Colorado Constitution. *See Davis v. Alaska*, 415 U.S. 308, 315, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974); . . . The defendant must be given an opportunity for effective cross-examination. *Merritt v. People*, 842 P.2d 162, 166 (Colo. 1992).

Effective cross-examination does not mean unlimited cross-examination. *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 1435, 89 L.Ed.2d 674 (1986); . . . A trial court has wide latitude to place reasonable limits on cross-examination based on concerns about prejudice, confusion of the issues, undue delay or waste of time, and marginal relevance. [State case law citations omitted].

Unless the trial court restricts cross-examination to such an extent as to constitute a denial of the right of confrontation, the scope and limits of cross-examination are within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. [State case law citations omitted].

### B. Discussion

Knight argues that the moonlighting allegations were admissible to show (1) the detective's motive to testify for the prosecution and (2) the detective's character for untruthfulness. We address and reject these arguments as follows.

### 1. Motive to Testify

Relying on *Davis v. Alaska*, *supra*, Knight argues that evidence of the moonlighting investigation was admissible to show that the detective had a motive to testify favorably for the prosecution.  According to Knight, the detective could have thought that, by favoring the prosecution, he might avoid potential criminal charges and disciplinary action for moonlighting.  We conclude that the trial court properly excluded this line of inquiry.

The record shows that, at the time of trial, the police department had not yet concluded its internal investigation of the moonlighting allegations.  It also shows that, once the internal investigation was concluded, the Adams County District Attorney would act as special prosecutor.

Under these circumstances, the trial court was correct in ruling that this was "not a *Davis v. Alaska* situation."  The detective had no motive to favor Denver prosecutors because they were not in a position of control over the moonlighting case.  Any potential disciplinary or charging decision would be made by police administrators or the special prosecutor.  [State case law citation omitted]; *see also United States v. Ellzey*, 936 F.2d 492, 496-97 (10th Cir.1991); . . . .

Knight asserts that the prosecutors could have influenced the disciplinary and charging decisions even though they were not in direct control.  We are not persuaded.

Knight's argument has logical force only if the detective believed the following to be true: (1) Denver prosecutors wanted the detective to provide something other than strictly truthful testimony; (2) in exchange for such testimony, the Denver prosecutors would try to influence, on the detective's behalf, the police department's disciplinary decisions and the special prosecutor's charging decisions; and (3) the police administrators and special prosecutor would reward the efforts of the Denver prosecutors. But the record contains no indication that the detective believed these things, nor does it suggest that any of them was actually true.

Because this line of inquiry was speculative, we conclude that the trial court properly excluded it under CRE 403. The trial court could reasonably have concluded that this inquiry would have triggered a time-consuming

> and confusing foray into collateral and prejudicial matters and would have
> shed no light on the reliability of the detective's expert opinion. [State case
> law citations omitted.]

*Knight*, 167 P.3d at 152.

The state appellate court also rejected Applicant's argument that evidence of

moonlighting would have demonstrated the detective's character for untruthfulness.

*Id.* at 153.  The appellate court concluded that the trial court did not abuse its discretion

in excluding the evidence based on the following grounds:

> Defense counsel premised her offer of proof on the assertion that the
> detective's conduct constituted a theft. As previously noted, theft is
> generally not probative of character for untruthfulness.  [State case law
> citations omitted]. And the evidence would have shed little light on the
> reliability of the detective's expert opinion.  Thus, the trial court could
> reasonably have concluded that any probative value of the evidence was
> substantially outweighed by the "danger of unfair prejudice, confusion of
> the issues, or misleading the jury" under CRE 403.

*Id.*

The Confrontation Clause of the Sixth Amendment guarantees the right of an

accused in a criminal prosecution "to be confronted with the witnesses against him."

U.S. Const. amend. VI.  "The main and essential purpose of confrontation is to secure

for the opponent the opportunity of cross-examination."  *Davis*, 415 U.S. at 315-316

(internal quotation marks omitted).  The constitutionally protected right of cross-

examination includes exposure of a witness' motivation in testifying.  *Id.* at  316-317.

However, the Confrontation Clause does not prevent the trial court from imposing any

limits on defense counsel's inquiry into the potential bias of a prosecution witness.  *Van*

*Arsdall,* 475 U.S. at 679.  Trial judges have wide discretion "to impose reasonable limits

on such cross-examination based on concerns about, among other things, harassment,

prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive

or only marginally relevant." *Id.* "[T]he Confrontation Clause guarantees an opportunity

for effective cross-examination, not cross-examination that is effective in whatever way,

and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15,

20 (1985) (per curiam) (emphasis in original).  However, a trial court may violate a

defendant's confrontation rights by prohibiting all inquiry into an event that "a jury might

reasonably have found furnished the witness a motive for favoring the prosecution in his

testimony." *Van Arsdall*, 475 U.S. at 679.

### 1. *Motive to testify favorably for the prosecution*

The Colorado Court of Appeals determined correctly that *Davis* and *Van Arsdall*

govern the disposition of Petitioner's claim that the trial court's restriction on cross-

examination precluded him from showing that Lt. Priest had a motive to testify favorably

for the prosecution, in violation of his Sixth Amendment confrontation rights.  The Court

therefore addresses whether the state appellate court unreasonably applied those

decisions in upholding the trial court's ruling.  *See* 28 U.S.C. § 2254(d)(1).

In both *Davis* and *Van Arsdall*, the Court held that the defendant's right of

confrontation was infringed when the trial judge excluded an entire area of possible bias

of a government witness from inquiry by defense counsel.  In each case, however, the

prosecutor had direct authority or influence over the witness's legal circumstances.  In

*Davis*, the witness was on probation by order of a juvenile court within the prosecutor's

jurisdiction.  The witness thus was vulnerable to undue pressure to testify favorably to

the prosecution out of fear of probation revocation.  415 U.S. at 317-318.  In *Van*

*Arsdall*, the prosecution dismissed a criminal charge against the witness after the

10

witness agreed to speak to the prosecutor about the murder for which the defendant was on trial.  475 U.S. at 676.

By contrast, the state appellate court found in Petitioner's case that the Denver County prosecutor did not have any direct authority or influence over the pending internal affairs investigation against Lt. Priest.  Instead, the matter was the subject of an internal police department investigation and would be referred, if at all, to the special prosecutor.  The state court's findings are presumed correct under 28 U.S.C.        § 2254(e)(1) and are supported by the state court record.  *See* State Court R. Vol. I at 18, 23-24, 171-73.  Petitioner has not met his burden to rebut those findings with any clear and convincing evidence to the contrary.  28 U.S.C. § 2254(e)(1).  This case is therefore distinguishable on its facts from the circumstances presented in *Davis* and *Van Arsdall*. Nonetheless, an unreasonable application of Supreme Court law may occur, for purposes of federal habeas review, if the state appellate court "unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply." *House*, 527 F.3d at 1018; 28 U.S.C. § 2254(d)(1).

Outside the specific contexts of *Davis* and *Van Arsdall*, Tenth Circuit case law recognizes that the determination of whether a trial court's restriction on cross-examination runs afoul of the Sixth Amendment involves a highly fact specific inquiry. *See e.g. United States v. Ellzey*, 936 F.2d 492, 496-97 (10th Cir. 1991) (trial court did not violate defendant's confrontation rights by restricting cross-examination of prosecution witness in federal criminal trial about a pending *state* felony indictment against him); *United States v. Rosario Fuentez*, 231 F.3d 700, 703-05 (10th Cir. 2000) (defendant's confrontation rights were not violated when trial court precluded cross-

11

examination of investigative officer about officer's demotion pursuant to internal affairs investigation that occurred after defendant's arrest, where defense was otherwise allowed to attack officer's credibility and possible bias); *United States v. Sarracino*, 340 F.3d 1148, 1167 (10th Cir. 2003) (defendant's confrontation rights were violated when defense was prevented from cross-examining a federal investigator about his resignation from the Bureau of Indian Affairs while under investigation for misuse of a government computer during the pendency of the defendant's criminal case); *Saiz v. Ortiz*, 392 F.3d 1166, 1182-83 (10th Cir. 2004) (upholding state court's determination that habeas petitioner's confrontation rights were not violated by trial court's restriction on cross-examination of prosecution's expert witness about certain written statements made by witness in a separate case as "marginally relevant," where petitioner was allowed to cross-examine witness about witness's general involvement in the other criminal trial).

The Tenth Circuit found a Confrontation Clause violation in *Sarracino* based on factual circumstances somewhat similar to those in Petitioner's case.  However, the Court cannot say, in light of the Circuit Court's reasoning in *Ellzey*, *Rosario Fuentez*, and *Saiz*, that the state appellate court's determination of Petitioner's claim was "so arbitrary as to be unreasonable" under *Davis* and *Van Arsdall*.  *See Maynard*, 468 F.3d at 671 (federal habeas court may only issue the writ if it concludes that the state court decision was "so arbitrary as to be unreasonable" under Supreme Court law).

A violation of the Confrontation Clause occurs where the defendant "is prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury

12

the facts from which jurors. . . *could appropriately draw inferences* relating to the witness.'" *Van Arsdall*, 475 U.S. at 680 (quoting *Davis*, 415 U.S. at 318) (emphasis added). *Van Arsdall* recognizes that the trial court may impose limits on cross-examination without running afoul of the Sixth Amendment where the proposed cross-examination is "only marginally relevant." *Id.* at 679.  In *Ellzey*, the Circuit Court found that the requested cross-examination of the witness about pending state criminal charges was of marginal relevance because the defense failed to sufficiently connect those charges to the witness' testimony in the defendant's federal criminal case, "and, thus there was no 'appropriate inference' of a 'prototypical' form of bias to be drawn." 936 F.2d at 496.   The Tenth Circuit rejected the defendant's argument that the witness's belief that he may benefit by his testimony in the criminal case was sufficient to show bias because there was no evidence to support that contention.  *Id.*

The Colorado Court of Appeals relied on *Ellzey* to conclude that the pending internal affairs investigation of Lt. Priest was not sufficiently probative of a motive to testify for the prosecution such that an "appropriate inference" of bias could be drawn from his testimony in Petitioner's criminal case.  *Ellzey*, 936 F.2d at 496.  The state appellate court found no evidence to suggest that Lt. Priest believed that if he provided testimony favorable to the prosecution, the Denver prosecutor would influence the outcome of the internal affairs investigation or any criminal charges filed against Lt. Priest.  Those findings are presumed correct and have not been rebutted by the Petitioner.  28 U.S.C. § 2254(e)(1).  Accordingly, this Court cannot find that "most reasonable jurists exercising their independent judgment would conclude th[at] [the

13

Colorado Court of Appeals] misapplied [*Davis* and *Van Arsdall* ]" in relying on *Ellzey* to determine Petitioner's claim.  *Maynard*, 468 F.3d at 671.

Moreover, Petitioner's counsel cross-examined Lt. Priest thoroughly regarding the bases for his crime reconstruction opinion.  *See generally* State Court R. Vol. XVI at 27-78.  The trial court did not restrict Petitioner's cross-examination of Lt. Priest except to exclude the marginally relevant evidence of the pending internal affairs investigation into Lt. Priest's alleged moonlighting activities.  Petitioner therefore had adequate opportunity to explore issues of the witness's credibility and bias.  *See Saiz, Rosario Fuentez.*

The state appellate court's determination that Petitioner's Sixth Amendment confrontation rights were not violated by the trial court's restriction on cross-examination of Lt. Priest about the pending internal affairs investigation to show the witness's bias was based on a reasonable determination of the facts in light of the evidence presented and was a reasonable application of *Davis* and *Van Arsdall*.  Accordingly, Petitioner is not entitled to federal habeas relief for this claim.

**2.  *Character for Untruthfulness***

Petitioner also claims that the trial court's restriction on his cross-examination of Lt. Priest violated his Sixth Amendment confrontation rights because the line of inquiry was probative of the witness's character for untruthfulness.

The AEDPA "requires federal habeas courts to deny relief that is contingent upon a rule of law not clearly established at the time the state court conviction became final."

14

*Williams*, 529 U.S. at 380.  Accordingly, Petitioner does not have a federal habeas remedy unless the Sixth Amendment Confrontation Clause confers a right to examine adverse witnesses on issues of general credibility.

In *Davis*, the Supreme Court distinguished between a "general attack" on witness credibility and a more particular attack "directed toward revealing possible biases, prejudices, or ulterior motives as they may relate directly to issues or personalities in the case at hand." *Davis*, 415 U.S. at 316.  The holding in *Davis* addressed the latter form of questioning and held that it was protected by the Sixth Amendment.  *Id.* at 320; *see also* 415 U.S. at 321 (Stewart, J., concurring) (emphasizing that "the Court neither holds nor suggests that the Constitution confers a right in every case to impeach the general credibility of a witness"); *see also Olden v. Kentucky*, 488 U.S. 227, 231 (1988) ("a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.") (quoting *Van Arsdall*, 475 U.S. at 680).

Several Circuit Courts of Appeal have recognized that it is within the trial court's discretion to limit more general attacks on witnesses' credibility.  *See Dalton v. Dinwiddie,* 273 F. App'x 724, 727 (10th Cir. 2008); *Quinn v. Haynes*, 234 F.3d 837, 845 (4th Cir. 2000); *Mills v. Estelle*, 552 F.2d 119, 122-23 (5th Cir. 1977); *Boggs v. Collins,* 226 F.3d 728 (6th Cir. 2000); *Hogan v. Hanks*, 97 F.3d 189, 191 (7th Cir. 1996); *United States v. Bartlett*, 856 F.2d 1071, 1088-89 (8th Cir. 1988); *Hughes v. Raines*, 641 F.2d 790, 793 (9th Cir. 1981); *but see Vasquez v. Jones*, 496 F.3d 564, 572 n.5 (6th Cir.

2007) (criticizing *Boggs* and noting that prior to *Davis*, the Supreme Court held in *Smith v. State of Illinois*, 390 U.S. 129, 131-32 (1968), that the petitioner's confrontation rights were violated when the trial court denied him the right to ask the principal prosecution witness either his name or where he lived, after the witness admitted that the name he had first given was false).

Even if *Smith* establishes a Sixth Amendment right to cross-examine adverse witnesses on issues of general credibility, that right is not absolute.  Under *Van Arsdall*, the trial court has wide discretion to impose reasonable limits on cross-examination based on concerns about interrogation that is only marginally relevant and prejudicial. 475 U.S. at 679.  The Colorado Court of Appeals determined that the trial court did not abuse its discretion in precluding cross-examination of Lt. Priest about the pending internal affairs investigation because the evidence was not probative of the witness's character for untruthfulness or the reliability of his opinions and was unduly prejudicial. *Knight*, 167 P.3d at 153.  That determination was reasonable in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(2).  Further, the state appellate court's decision was not an unreasonable application of *Van Arsdall* to the extent *Van Arsdall* is implicated by Petitioner's claim.  28 U.S.C. § 2254(d)(1). Accordingly, Petitioner is not entitled to federal habeas relief for his first claim.

## B.  CLAIM TWO

For his second claim, Petitioner asserts that the trial court's refusal to sever the first degree murder charge from the first degree aggravated motor vehicle theft charge prejudiced him at trial, in violation of due process.  Habeas Application, attachment at 3.

The Fourteenth Amendment Due Process Clause affords a state criminal

16

defendant the right to a fundamentally fair trial.  *See Estelle v. Williams*, 425 U.S. 501, 503 (1976); *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984).  In *Zafiro v. U.S.*, 506 U.S. 534, 539 (1993), the Supreme Court held, in the context of a joint trial of co-defendants, that a severance should be granted by the trial court "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  *Id.* at 539.  *See also United States v. Lane*, 474 U.S. 438, 446 n. 8 (1986) (noting that a constitutional violation arises only if the improper joinder "results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial.").  Similarly, the Tenth Circuit has recognized that "a criminal defendant has no constitutional right to severance unless there is a strong showing of prejudice. . . ." *Spears v. Mullin,* 343 F.3d 1215, 1235 (10th Cir. 2003) (quoting *Cummings v. Evans*, 161 F.3d 610, 619 (10th Cir. 1998)).  Where a criminal defendant seeks a severance of counts, he must "make[ ] a convincing showing that he has both important testimony to give concerning one count and a strong need to refrain from testifying on the other." *U.S. v. Martin,* 18 F.3d 1515, 1519 (10th Cir. 1994) (quoting *United States v. Valentine*, 706 F.2d 282, 291 (10th Cir. 1982)).

Petitioner argued to the trial court that severance of the motor vehicle theft charge was warranted because the motor vehicle theft occurred approximately two weeks before the shooting and, therefore, the vehicle was not stolen for the purpose of committing or fleeing from a crime.  State Court R. Vol. I at 28; *id.*; Vol. VII at 49-50, 53. Petitioner contended that the offenses were not part of the same criminal episode because the fact that the car was stolen had no relevance to the circumstances

17

surrounding the victim's death.  *Id.*  Petitioner made an offer of proof that he had a strong interest in testifying that he had acted in self-defense in shooting the victim.  *Id.* Vol. VII at 53-55.  By contrast, Petitioner had a strong need not to testify as to the motor vehicle theft charge because the only issue for trial was whether he knew the car was stolen.  *Id.* at 55.  Petitioner argued that if he was forced to inculpate himself on the motor vehicle theft charge on cross examination, the jury would be biased against him on the murder charge.  *Id., *Vol. I at 29.

The prosecution made a conclusory argument that evidence Petitioner drove a stolen vehicle to and from the shooting and to Oklahoma after the shooting was relevant to the charge of first-degree murder and to his theory of self-defense.  State Court R. Vol. VII at 61-63.  The trial court denied the motion to sever, finding that the charges were interrelated and that Petitioner had failed to show actual prejudice resulting from the joinder of counts for trial.  *Id.* at 65-69.

The Colorado Court of Appeals resolved Petitioner's claim on direct appeal as follows:

### III.  Motion to Sever Counts

Knight contends that the trial court erroneously refused to order separate trials on the charges of first degree murder and aggravated motor vehicle theft. We reject this contention.

Criminal offenses may be tried together if they "are of the same or similar character or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan." Crim. P. 8(a)(2).  If a joinder of offenses will prejudice a defendant, "the court may order an election or separate trials of counts."  Crim. P. 14.

We will disturb a trial court's ruling on a motion to sever counts only if the defendant shows an abuse of discretion.  *People v. Aalbu*, 696 P.2d 796, 806 (Colo.1985). . . .

Here, the trial court denied Knight's request for separate trials because the two charges involved interrelated proof and because Knight failed to demonstrate that he would be prejudiced by a joint trial. We conclude that this ruling was within the bounds of the trial court's discretion.

The record supports the trial court's determination that the two charges involved interrelated proof. Evidence that Knight drove the stolen vehicle to and from the scene of the homicide was relevant in the prosecution of both offenses: (1) it satisfied an element of aggravated motor theft under § 18-4-409(2)(d), C.R.S. 2006; and (2) it was relevant to the culpable mental state element of first degree murder because it supported an inference that Knight had consciously acted to avoid detection (which in turn supported an inference that Knight had acted after deliberation).

Knight has not shown that he was prejudiced by the joint trial. The trial court instructed the jury not to let its decision on one count influence its decision on any other, and there is no indication that the jury was unable to separate the facts and legal principles applicable to each offense.

We therefore uphold the trial court's ruling.

*People v. Knight*, 167 P.3d at 151.

Although this Court may have ruled differently on Petitioner's motion to sever counts, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Accordingly, this Court does not review the correctness of the state appellate court's determination, under Colo. Crim. P. 8(a), that joinder of the two counts was appropriate because the two charges involved interrelated proof. *See Fox v. Ward*, 200 F.3d 1286, 1292 (10th Cir. 2000) (stating that severance is generally a question of state law). The Court's inquiry on federal habeas review is limited to whether the trial court's failure to sever the motor vehicle theft charge rendered Petitioner's trial on the murder charge fundamentally unfair, in violation of due process. *See Fox*, 200 F.3d at 1292, 1296; *see also Hooker v. Mullin*, 293 F.3d 1232, 1238 (10th Cir. 2002). Under the deferential

19

AEDPA standard of review, Petitioner is not entitled to the writ unless the state appellate court's determination of his claim resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established federal law" or "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).

Petitioner testified at trial in support of his theory of self-defense and was forced to admit on cross-examination that the vehicle he drove to and from the scene of the shooting was stolen.  State Court R. Vol. XVIII at 132.  However, inculpating himself on the motor vehicle theft charge was not, *per se*, the crux of Petitioner's claim of prejudice.  Instead, Petitioner was concerned primarily about the prejudicial impact the admission would have on the jury with regard to the separate murder charge.  State Court R. Vol. I at 29.  At trial, Petitioner relied, in part, on evidence of his good character to support his theory of self-defense.  As he explained to the state appellate court:  "Mr. Knight was a college student with no record.  Being forced to admit to car theft tarnished his character and made the jury more inclined to find him, now just another young African American criminal from Montbello, guilty of the more serious [murder] charge."  Answer, Ex. A at 15-16.

The Colorado Court of Appeals determined that Petitioner was not prejudiced by the joint trial because of the trial court's instructions to the jury.  The state court record reflects that the trial court properly instructed the jury about the prosecution's burden of proof for each charge.  State Court R. Vol. I at 137.  In addition, the jury was instructed that each count charged against the Petitioner was "a separate and distinct offense and the evidence and the law applicable to each count should be considered separately,

20

uninfluenced by your decision as to the other counts." *Id.* at 143.  The jurors were

further instructed that a guilty verdict as to one charged offense should not control their

verdict as to any other charged offense.  *Id.*

   "[J]uries are presumed to follow their instructions."  *Richardson v. Marsh*, 481

U.S. 200, 211 (1987).  Under *Zaffiro*, the trial court's instructions to the jury arguably

cured any prejudice to the Petitioner on the murder charge resulting from the trial court's

denial of his motion to sever counts.  *See Zaffiro*, 506 U.S. at 540-41 (holding that

court's instructions to jury "sufficed to cure any possibility of prejudice" resulting from

trial court's refusal to grant co-defendants' motion for separate trials).

   However, the Court does not rely exclusively on the jury instructions to find that

Petitioner did not suffer any actual prejudice as a result of the joint trial.  The Court has

carefully and thoroughly reviewed the record of the state trial proceeding.  Based on the

strength of the prosecution's evidence at trial, there is no reasonable probability that

Petitioner would have been acquitted on self-defense if he had been tried solely on the

murder charge.

   The evidence at trial established that on the night of the murder, Petitioner and

his friend, Steve Bolling, drove to the residence of Nadine Hughes, the victim's

girlfriend, to engage the victim in a fistfight.  Outside Hughes' house, Petitioner and the

victim were discussing a fight, but Hughes argued that they were not going to fight in

her front yard.  Bolling and Hughes testified that the last words they heard the victim say

were "we can do this another day."  State Court R. Vol. XII at 96-97; Vol. XV at 79.

Petitioner testified that the victim started to walk back toward the front door of the

house, but then turned around, said "f— this s—," pulled his gun, and fired at Petitioner

from the front porch, outside the front door. *Id.*, Vol. XVIII at 98-99, 148. Petitioner stated that he shot back from the driveway as he retreated and then ran for the car. *Id.* at 99-100. Bolling and Hughes each heard at least three shots, but did not see who fired first. *Id.*, Vol. XV at 76; Vol. XII at 97.

The central issue at trial was whether Petitioner shot the victim in self-defense. The pathologist/coroner testified that the victim was paralyzed instantly when the bullet fired by the Petitioner entered his spinal cord. State Court R. Vol. VIII at 71. The physical evidence established that a 9mm shell casing matching the 9mm handgun found next to the victim's body was recovered from the front porch of Hughes' residence. *Id.,* Vol. XIV at 54, 61; Vol. XV at 117. Gunshot residue was found on the victim's right hand. *Id.*, Vol. XIII at 124, 126. There was a possible bullet hole in the screen door. *Id.*, Vol. XII at 131-32; XIV, at 42-46. There was one bullet hole and one mark on an interior wall along the stairwell. *Id.*, Vol. XII, 128, 147. A bullet removed from the bullet hole was tested, but could not be identified positively as having been fired from the victim's gun. *Id.*, Vol. XIV at 61; Vol. XV at 119. The gun fired by Petitioner was never recovered. There was no evidence of any bullet impact to the driveway, sidewalk or front yard of Hughes' residence. *Id.*, Vol. XIV at 26-73; Vol. XVI at 98.

Petitioner's version of events was contradicted by expert opinion testimony from Lt. Priest, a prosecution witness who reconstructed the crime scene for the jury. Priest formed his opinions and conducted bullet trajectory analyses based on the physical evidence, photographs taken of the crime scene immediately after the shooting, the coroner's autopsy report (which stated the victim's height and the location of the entry

22

and exit wounds of the bullet in the victim's neck), and police interviews of Bolling and Hughes.  State Court R. Vol. XV at 194-229.

Priest determined that the victim was standing inside the doorway of Hughes' house when the shooting occurred, instead of outside on the porch as Petitioner and Bolling testified.  State Court R. Vol. XV at 238-39.  Priest explained that elevation of the porch is nine inches lower than the doorway of the house and the bullet would have passed over the victim's head, rather then through his neck, as stated in the coroner's report.  *Id.* at 239.  Priest further testified that Petitioner could not have been retreating from the driveway as he shot the victim because that location was outside the line of trajectory and the bullet fired from Petitioner's weapon would not have made contact with the victim.  *Id.*, Vol. XV at 224-39; Vol. XVI at 85; Vol. XIX at 80-81.  According to Priest's trajectory analysis, Petitioner fired at the victim from a much closer range, such as the sidewalk between the driveway and the front porch.  *Id.*, Vol XV at 229; Vol. XVI at 37.  Priest also opined that the victim had been standing in a spread-eagled position in the front doorway of the house with his right arm behind an interior wall and that he fired his gun backwards into the house at the moment he was shot by Petitioner, leaving a bullet in the wall behind him.  *Id.*, Vol. XV at 230-237; Vol. XVI, at 20-21.

Lt. Priest's expert testimony was consistent with the forensic evidence and damaged Petitioner's theory that he shot the victim in self-defense.

Petitioner's theory of self-defense was also undercut by the contradiction between his testimony and the testimony of Bolling and Hughes about the last words uttered by the victim before he was shot.  In addition, a Denver detective who was present in Oklahoma following Petitioner's arrest testified that when the possible

23

criminal charges and defenses were explained to Petitioner, including the fact that "the victim had a gun," Petitioner's response was "He did?"  *Id.*, Vol. XIV at 83-85.  Petitioner testified that he merely confirmed the factual representation that the victim had a gun with the statement, "he did." *Id.*, XVIII at 116.

Petitioner presented evidence of his good character and that the victim had been a gang member.  *See generally* State Court R. Vols. XVI, XVII and XVIII.  A friend of Petitioner's testified that Petitioner called him the night of the shooting and said: "He busted on me first" and "I shot back." *Id.*, Vol. XVIII at 223.  However, the prosecution established that Petitioner returned to college in Oklahoma the day after the shooting without advising the police or anyone in his family that he had shot at the victim in self-defense. *Id.* at 100-106, 159-61.

In sum, Petitioner put on a credible case of self-defense, but the overwhelming weight of the direct and circumstantial evidence proved the charge of second degree murder and disproved the affirmative defense.  Thus, to the extent Petitioner's admission to driving a stolen vehicle had any prejudicial impact on the jury that was not cured by the jury instructions, it did not fatally infect Petitioner's trial on the murder charge.  Stated differently, even if the trial court should have granted the motion for a severance, the joint trial did not actually prejudice the defense or affect the outcome of Petitioner's trial.  Accordingly, the Court cannot say that the state appellate court's conclusion that Petitioner was not prejudiced by the joinder of counts was based on an unreasonable determination of the facts in light of the evidence presented or was contrary to or an unreasonable application of clearly established federal law.  *See Aycox*, 196 F.3d at 1177-78 (federal habeas court owes deference to state court's

24

determination of merits, even if state court did not analyze claim under federal law).

Petitioner therefore is not entitled to habeas relief on his second claim.

### III. CONCLUSION

Accordingly, it is ORDERED that Petitioner Bryson Knight's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Doc. No. 1) is DENIED and the civil action is dismissed WITH PREJUDICE.  It is

FURTHER ORDERED that each party shall bear his own costs and attorney's fees.  It is

FURTHER ORDERED that no certificate of appealability will issue because Petitioner Bryson Knight has not made a substantial showing of the denial of a constitutional right, pursuant to 28 U.S.C. § 2253(c).

DATED: December 17, 2010.

BY THE COURT:

CHRISTINE M. ARGUELLO
Untied States District Judge